**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | | |
|---|---|---|
| STRATEGIC MARKETING SERVICES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | CAUSE NO. <u>3:20CV-619-CHB</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| X10 TEAMS, LLC | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Serve:  Cesar Alejandro Benavides Scott | ) | |
| 7935 SW 193rd St. | ) | |
| Cutler Bay, Florida 33157 | ) | *Electronically Filed* |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL J. WAGNER | ) | |
| | ) | |
| Serve:  Michael J. Wagner | ) | |
| 1017 Anchorage Woods Circle | ) | |
| Louisville, Kentucky 40223 | ) | |
| and | ) | |
| | ) | |
| CESAR A. BENAVIDES | ) | |
| | ) | |
| Serve:  Cesar A. Benavides | ) | |
| 7935 SW 193rd St. | ) | |
| Cutler Bay, Florida 33157 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**COMPLAINT**

---

COMES NOW, the Plaintiff, Strategic Marketing Services, LLC ("Strategic Marketing" or "Plaintiff"), by Counsel, and for its Complaint against Defendants, X10 Teams, LLC ("X10 Teams"); Michael J. Wagner ("Wagner"); and Cesar A. Benavides ("Benavides") (collectively the "Defendants"), and hereby alleges as follows:

1

## INTRODUCTION

1.      This Complaint concentrates primarily on the joint, fraudulent activities of Wagner and Benavides during and after the course of Wagner's employment as Chief Information Officer ("CIO") at Strategic Marketing. Specifically, this Complaint details Wagner's and Benavides' violation(s) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Wagner's violation(s) of his fiduciary duties to Strategic Marketing by defrauding Strategic Marketing by and through the creation and operation of X10 Teams, as well as other claims including but not limited to fraudulent misrepresentation and breach of contract.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1964 and personal jurisdiction because Defendants have all transacted business in the Commonwealth of Kentucky pertaining to the allegations herein in this Complaint, thereby maintaining necessary minimum contacts.

3.      Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because a substantial part of the acts and/or omissions complained of herein occurred in the Western District of Kentucky, in Louisville, Jefferson County, Kentucky. Defendant Wagner is a resident domiciled in the Western District of Kentucky, with his place of residency located in Louisville, Jefferson County, Kentucky.

## PARTIES

4.      At all times relevant hereto, **Plaintiff Strategic Marketing Services, LLC** is and was a foreign, Delaware limited liability company with its principal place of business at 1901 Stanley Gault Parkway, Louisville, Kentucky 40223. Strategic Marketing is an industry-leading

company that specializes in predictive data marketing for automobile dealers engaged in commerce.

5.      At all times relevant hereto, **Defendant X10 Teams, LLC,** is and was a foreign, Florida limited liability company with its principal place of business at 7935 SW 193 St. Cutler Bay, Florida 33157. Strategic Marketing entered into a Master Services Agreement and Statement of Work (attached hereto as **Exhibit 1**) with X10 Teams in which X10 Teams was to provide Strategic Marketing with offshore and/or nearshore application development services with an effective date of January 24, 2019. X10 Teams was filed with the State of Florida on or around April 16, 2019 by the joint efforts of Wagner and Benavides but under the guise of the sole efforts of Benavides. Unbeknownst to Strategic, Wagner was in fact a silent Member and Owner of X10 Teams, utilizing his position of CIO for and at Strategic Marketing to orchestrate deceptive deals with Strategic Marketing through X10 Teams, thereby enjoying the profits derived by X10 Teams in its dealings with Strategic Marketing for his own personal gain and benefit. Wagner has and continues to go to extraordinary lengths to hide his ownership interest in X10 Teams, and never disclosed his personal pecuniary interests in X10 Teams to Strategic Marketing during his employment with Strategic Marketing. Not until after his separation from Strategic Marketing and Strategic Marketing's subsequent discovery of his ownership of X10 Teams did Wagner admit to his ownership. X10 Teams markets itself as a company that provides nationwide services, including software development, technical support, network monitoring, security scanning, amongst others, thereby directly affecting interstate commerce.

6.      At all times relevant hereto, **Defendant Michael J. Wagner,** is and was a resident of Louisville, Jefferson County, with his place of domicile located at 1017 Anchorage Woods Circle Louisville, Kentucky 40223. Wagner was formerly the CIO and a fiduciary of Strategic

Marketing until his separation with Strategic Marketing on June 25, 2020. Following Wagner's separation with Strategic Marketing, Strategic Marketing discovered Wagner's unlawful conspiracy to defraud Strategic Marketing through his shell company, X10 Teams.

7.    At all times relevant hereto, **Defendant Alejandro Benavides ("Benavides"),** is and was a resident of the State of Florida, who, according to background reports, also goes by various other names, including "Caesar Scott" and "Caesar A. Benavides Scott." Benavides' role in Wagner's conspiracy to defraud Strategic Marketing is and remains that of Wagner's co-conspirator and operation as the "front man" or "strawman" of X10 Teams while Wagner continues to secretly work behind the scenes in an effort to conceal his ownership and control of and involvement with X10 Teams to Strategic Marketing. Benavides is and was a Member and Owner of X10 Teams. Benavides is and has been the CIO of CHUBB Insurance.

## FACTUAL ALLEGATIONS

8.    Strategic Marketing is an automotive marketing company, providing state-of-the-art data analytics services and products to nine (9) of the top ten (10) auto dealer groups in the United States.

9.    On May 11, 2015 Strategic Marketing hired and entered into an Employment Agreement (attached hereto as **Exhibit 2**) with Wagner for the position of CIO. As CIO and pursuant to Section 6(a) of the Employment Agreement, Wagner acknowledged and understood upon his entry into the Employment Agreement that he owed a duty to Strategic Marketing to "act in a fiduciary capacity for Strategic Marketing."

10.   In late summer of 2018, Strategic Marketing's Board of Directors initiated discussions to reduce costs and expenses of the company. Wagner, who attended and participated in the majority of Strategic Marketing's board meetings as the CIO, approached the Chief

Executive Officer ("CEO") and certain Board Members, individually, and presented to each such Board Member that he, Wagner, had a close acquaintance, Benavides, who specialized in contracting for Information Technology ("IT") software development. Wagner was responsible for participating in Strategic Marketing's board meetings by reporting any and all IT information and/or updates with the company to the Board of Directors. Wagner utilized his position as CIO and role at Strategic Marketing's board meetings to acquire inside knowledge of Strategic Marketing's company needs and its financial information he would eventually utilize to enter into and maintain his business relationship with Strategic Marketing through his shell company, X10 Teams, to his personal benefit and to the corresponding detriment of Strategic Marketing.

11.     Following Wagner's discovery of Strategic Marketing's efforts to reduce costs and expenses, Wagner began conspiring with Benavides to form a shell company with the objective of utilizing this company to enter into a/or multiple business agreement(s) with Strategic Marketing in order for Wagner to "double-dip" in the assets of Strategic Marketing, while dually maintaining roles of CIO of Strategic Marketing and as a hidden business partner of the eventual shell company, X10 Teams under his role as owner.

12.     Commencing in November 2018, Wagner and Benavides jointly partook in carefully calculated activity, with the exchange of various emails from their personal email addresses in order to effectuate their conspiracy so as to keep hidden from Strategic Marketing their clandestine efforts to defraud Strategic Marketing, by way of their formation of X10 Teams.

13.     On November 1, 2018, Benavides corresponded with Alejandro Ortega ("Ortega") from Getecsa, an IT staffing company based in Monterrey, Mexico, wherein he was provided with a presentation of services from Getecsa. Benavides received this presentation through his personal

email address, benscoalex@gmail.com. On November 2, 2018, Benavides forwarded this presentation to Wagner to Wagner's personal email address.

14.     On November 5, 2018, Wagner and Benavides purchased the Domain Name for X10 Teams. During Strategic Marketing's internal investigation, Wagner represented to Strategic Marketing in writing that the Domain Name was purchased on October 1, 2018.

15.     On December 4, 2018, Wagner re-sent the Getecsa presentation from his personal email address, mwagner@ntsolutionsinc.com, to his email with Strategic Marketing, mwagner@strategicmarketing.com.

16.     During Strategic Marketing's internal investigation, Strategic Marketing uncovered on Wagner's computer and hard drive, both provided to Wagner by and through Strategic Marketing, dated November 6, 2018, an X10 Teams File Folder and within said File Folder, a document labeled "MSA-X10". This document was actually a scanned copy of CHUBB Insurance's Master Services Agreement that was labeled "MSA-X10". As mentioned in Paragraph 7, Benavides remains employed by CHUBB Insurance as its CIO. This was the commencement of the Master Services Agreement and Statement of Work drafted by Wagner and later entered into between Strategic Marketing and X10 Teams.

17.     On November 8, 2018, in the X10 Teams File Folder on Wagner's company issued laptop, were two (2) documents saved within, one labeled "MSA-X10 1-10" and the other "MSA-X10 11-23".   These were also scanned copies of the CHUBB Insurance Master Services Agreement but were labeled MSA-X10.

18.     On November 9, 2018, scans of CHUBB's Master Services Agreement were saved to Wagner's downloads folder at 8:26 a.m. and 8:33 a.m. At 8:45 a.m. a converted typed text version of CHUBB's Master Services Agreement was saved to Wagner's downloads folder.

19.    On December 7, 2018, in Wagner's Downloads folder was saved a logo design firm's presentation for the eventual and current X10 Teams logo. On January 7, 2018, from this same firm, was another document saved as "99 Designs Logo Placement Standards" (an instruction on how to utilize the X10 Teams logo) for the recently designed logo. On January 8, 2018 there was a saved JPG File with the eventual and current X10 Teams logo.

20.    On January 6, 2019, in the X10 Teams File Folder, was saved a draft document labeled "X-10 MSA-Strategic Marketing Services SOW v1". This was a continuation of the Statement of Work drafted by Wagner with the use of his inside knowledge of Strategic Marketing's specific needs, in an effort to obtain a business relationship with Strategic Marketing through X10 Teams.

21.    On January 7, 2019, on Wagner's hard drive in his X10 Teams File Folder, was saved a draft document labeled "X10 MSA Strategic Marketing Services". This was a continuation of the Master Services Agreement drafted by Wagner with the use of his inside knowledge of Strategic Marketing's specific needs, in an effort to obtain a business relationship with Strategic Marketing through X10 Teams.

22.    On January 11, 2019, only three (3) days after Wagner finalized and saved the X10 Teams logo as described in Paragraph 19, Wagner ordered X10 Teams business cards from Vistaprint for himself and for Benavides, both with the title of "Partner" (attached hereto as **Exhibit 3**).

23.    On January 14, 2019, on Wagner's computer, were two (2) more documents saved, one labeled "X10 MSA-Strategic Marketing Services SOW v2" saved at 9:12 a.m. and the other "X10 MSA-Strategic Marketing Services v3" saved at 9:44 a.m.

24.     On January 14, 2019, in the downloads folder of Wagner, were two (2) additional downloaded documents, at 9:18 a.m. a document labeled "X10-MSA-Strategic Marketing Services SOW v1" and the other at 9:35 a.m. "X10 MSA-Strategic Marketing Services".

25.     On January 17, 2019, in the X10 Teams File Folder was saved a document labeled "X10 SOW-Strategic Marketing Services SOW v3" at 3:57 p.m.

26.     On January 17, 2019, at 4:00 p.m. EST, Wagner, for the first time, utilized his Strategic Marketing email address to communicate with Benavides. Wagner delivered email correspondence to the personal email address of Benavides an email titled "My email here at Strategic", containing two (2) attachments, a document labeled "X10 SOW-Strategic Marketing Services SOW v1.docx" and "X10 MSA-Strategic Marketing Services.docx". Prior to this communication, Wagner and Benavides had exchanged working agreements back and forth to each other's respective personal email addresses in order to conceal Wagner's involvement in drafting the MSA and SOW.

27.     On January 18, 2019, at 8:13 a.m., the morning of the presentation to Strategic Marketing's CFO,  Benavides sent to Wagner's personal email address a meeting request via WEBEX to join him in his WEBEX Personal Room to discuss and review the aforementioned prepared-by-Wagner Master Services Agreement and Statement of Work.

28.     On January 18, 2019, at 8:27 a.m., Wagner replied to an email from Benavides with the subject line "RE: test. 2 attachments reference SOW and MSA".

29.     On January 18, 2019, at 8:35 a.m., in the X10 Teams File Folder on Wagner's computer, was saved a PowerPoint labeled "X10 Teams-Strategic Marketing-Jan 2019 v3".

30.     On January 18, 2019, Benavides presented the PowerPoint identified in Paragraph 29 to the Chief Financial Officer ("CFO") of Strategic Marketing to pitch the not-yet-formed shell

company, X10 Teams, and its services, to Strategic Marketing. This PowerPoint portrayed Wagner as Strategic Marketing's CIO and Benavides as a Partner of X10 Teams but was devoid of any mention of Wagner as Owner or Partner of X10 Teams, or any affiliation with the shell company whatsoever. Several of the image assets used in this PowerPoint presentation to Strategic Marketing's CFO were stored on Wagner's company issued computer in his X10 Teams File Folder. These image assets were saved in Wagner's X10 Teams File Folder on January 16, 2019, two (2) days prior to the presentation. Wagner created this PowerPoint with use of his inside knowledge of Strategic Marketing and Strategic Marketing's needs and financial information and thereafter shared the PowerPoint with Benavides to present to the CFO of Strategic Marketing.

31.     Wagner created the January 18, 2019 PowerPoint that was presented to the CFO of Strategic Marketing by Benavides under the guise that Benavides was the sole known Partner of X10 Teams and was thereby the creator of the PowerPoint. During Strategic Marketing's internal investigation, Wagner represented to Strategic Marketing in writing that "I was not involved in the setup of X10 Teams. Alejandro Benavides came up with the concept, its name and created its marketing materials" in an attempt to hide from Strategic Marketing his ownership and creation of and involvement with X10 Teams from November 2018 to his first  acknowledgement of his involvement with X10 Teams in July of 2020 after having been exposed.

32.     On January 18, 2019, at 8:37 a.m., Benavides delivered to Wagner from his X10 Teams email address, abenavides@x10teams.com, an email with the subject line "Fwd x10 MSA-Strategic Marketing Services v3.docx" and stated to Wagner, "Mike, here is the MSA document for your review. Regards.". As described in the foregoing, prior to this email, there were at the time already several versions of the Master Services Agreement saved and modified on Wagner's computer and exchanged between Wagner and Benavides over the previous two (2) months. This

email was sent in an effort to conceal this fact. The subject line containing "Fwd" is indicative of the fact that this document was forwarded and exchanged back and forth between Wagner and Benavides for an extended period of time.

33.     In an attempt to conceal from Strategic Marketing Wagner's ownership and creation of and involvement with X10 Teams, On January 18, 2019, at 8:39 a.m., just two (2) minutes after the email Benavides delivered to Wagner described in Paragraph 32, Benavides delivered to Wagner from his X10 Teams email address, another email with the subject line "fwd: x10 SOW-Strategic Marketing Services SOW v3.docx", and stated "Hello Mike, here is the first SOW… for your review. Let me know of any comments/feedback. Thanks Alejandro Benavides". On January 18, 2019, at 8:43 a.m., just four (4) minutes later, Benavides delivered to Wagner's Strategic Marketing email address from his X10 Teams email address, an email with the subject line "Proposed Agreements" and stated that attached were the proposed documents.

34.     Within the X10 Teams File Folder was, at this time and earlier in the month, saved versions of the "SOW-Strategic Marketing Services SOW v3.docx" on January 17, 2019 at 3:57 p.m. as described in Paragraph 25. Again, prior to this email, there were at the time already several versions of the Master Services Agreement saved and modified on Wagner's computer and exchanged between Wagner and Benavides over the previous two (2) months. This email was sent in an effort to conceal this fact. The subject line containing "Fwd" is indicative of the fact that this document was forwarded and exchanged back and forth between Wagner and Benavides for an extended period of time. Additionally, the statement "here is the first SOW" was intentionally used in an effort to falsely show that Benavides initially forwarded the SOW to Wagner for his first review of the document. This statement was fraudulent in nature as Wagner was the main creator

of the SOW and in fact, as stated previously, several versions of same had been exchanged back and forth between Wagner and Benavides during the month of January 2019.

35.     On January 18, 2019, Benavides sent the proposed agreements to Wagner, the CEO and the CFO of Strategic Marketing Wagner to maintain the illusion that he was the drafter and creator of the proposed agreements.

36.     On January 21, 2019, at 9:10 a.m., the CFO of Strategic Marketing notified Wagner via email he agreed to sign the final agreement once Benavides delivered same with changes.

37.     On January 21, 2019, at 9:13 a.m. the CFO of Strategic Marketing contacted Benavides, and cc'd Wagner, via email and requested he update the date on the final agreement.

38.     On January 21, 2019, at 1:33 p.m., Benavides acknowledged the email identified in Paragraph 37 and stated to the CFO of Strategic Marketing he would return the final agreement with changes as soon as possible.

39.     On January 23, 2019, at 1:46 p.m., Wagner forwarded the email from Paragraph 37 to Benavides' personal email address, and stated "Need to respond to this AB. What is the challenge and can I help?". This email is indicative of Wagner's investment in the Master Services Agreement and Statement of Work and the importance of having these documents signed and agreed to in order to effectuate his conspiracy to defraud Strategic Marketing.

40.     On January 23, 2019, at 2:59 p.m., Benavides delivered an email to the CFO of Strategic Marketing and to Wagner at their Strategic Marketing email addresses along with a PDF attachment labeled "SMS MSA SOW 1.pdf" and stated "Here is the doc. Thanks." Below was an earlier email from January 23, 2019 at 2:56 p.m. from Benavides' X10 Teams email address to Wagner, with missing information (manipulated and removed), which stated "Here are the documents. You can write down the starting date to meet your plans. Thanks AB." Wagner and

Benavides exchanged the foregoing emails to coordinate changes necessary to the final agreement and thereafter had the agreement sent to the CFO of Strategic Marketing from Benavides in an effort to continue to conceal Wagner's ownership and control of and involvement with X10 Teams to Strategic Marketing.

41.     On January 24, 2019, at 11:13 a.m., the signed Master Services Agreement and Statement of Work were delivered to Benavides via email to his X10 Teams email address and to Wagner to his Strategic Marketing email address.

42.     X10 Teams is memorialized on the prepared Master Services Agreement and Statement of Work as "X10 Teams, Inc.", an entity not now nor ever in existence. Benavides signed on behalf of "X10 Teams, Inc." as Partner.

43.     Based upon the foregoing, Wagner, while acting as the CIO and a fiduciary of Strategic Marketing, prepared and created the Master Services Agreement and Statement of Work under the guise of Benavides in an effort to conceal from Strategic Marketing his ownership and control of and involvement with X10 Teams.

44.     X10 Teams was only legally filed with the State of Florida on April 16, 2019 despite "X10 Teams, Inc.'s" entrance into the Master Services Agreement and Statement of Work with Strategic Marketing on January 24, 2019.

45.     On April 30, 2019, at 8:54 a.m., Benavides delivered an email on behalf of X10 Teams, with Wagner cc'd, to accounting personnel with Strategic Marketing with the subject line "X10 Teams Invoice" and explained therein how Strategic Marketing would receive its first invoice from X10 Teams. Benavides has not ever controlled or handled financial responsibilities and/or bookkeeping duties of X10 Teams. During Strategic Marketing's internal investigation, Wagner represented to Strategic Marketing in writing that the X10 Teams personnel team was

formed in March 2019 and that he overtook all bookkeeping responsibilities for X10 Teams in April 2019. With this email, Benavides and Wagner made an effort to further conceal from Strategic Marketing Wagner's ownership and control of and involvement with X10 Teams, thereby attempting to falsely portray to Strategic Marketing his involvement with X10 Teams and specifically his involvement with bookkeeping and financial matters of X10 Teams.

46.     On June 4, 2019, X10 Teams delivered Wagner an invoice via email from the Due.com invoicing service to Wagner's Strategic Marketing email address for the May contracting services. Mike was originally set up on the Due.Com site by X10 as the sole recipient of invoices from X10 Teams.  On June 8, 2019, Wagner forwarded the above email (invoice) to the Accounts Payable at Strategic Marketing and stated, "I was copied on this. Alejandro said something about paying by ach or PayPal etc if it is any easier. Should I have him reach out?".  At this point, the Strategic Marketing AP Department forwarded this email string to Benavides at X10 via email and requested that all future invoicing be sent directly to the Strategic Marketing AP Department as is the standard operating procedure for Strategic Marketing.

47.     In a concurrent event, on June 6, 2019, Benavides delivered an email on behalf of X10 Teams to Wagner at Wagner's Strategic Marketing email address with the subject line "May Invoice" and stated, "Hello, Mike, just double checking on April's payment. We have not received it yet, so wanted to validate its status from your end. You should have received May's invoice already. Can you confirm please. Thanks in advance.". Wagner then forwarded this email to Accounts Payable at Strategic Marketing and asked for status of payment. With this email and the email in Paragraph 46, Benavides and Wagner made an effort to further conceal from Strategic Marketing Wagner's ownership and control of and involvement with X10 Teams, thereby attempting to falsely portray to Strategic Marketing his involvement with X10 Teams and

specifically his involvement with bookkeeping and financial matters of X10 Teams. In reality Wagner was the sole bookkeeper of X10 Teams at this time and thereby knew of all financial dealings between Strategic Marketing and X10 Teams and of all financial records of X10 Teams. As an ongoing X10 business process, it was Mike who would generate the invoices as an X10 Teams Owners, conceal his identity by sending through the Due.com site, and then email it to himself as a Strategic Marketing employee.

48.     Wagner was separated from Strategic Marketing on June 25, 2020 in reduction in force efforts as a direct result of financial constraints incurred by the company as a result of the COVID-19 pandemic.

49.     On June 29, 2020, Getecsa delivered an email to Strategic Marketing requesting help in locating Wagner (whom Getecsa knew was an employee of Strategic Marketing) as Wagner failed to respond to Getecsa's emails in an effort to solve an invoicing issue between X10 Teams and Getecsa. Getecsa even requested Wagner's personal email.

50.     Strategic Marketing had no knowledge at this time of Wagner's involvement and/or affiliation with X10 Teams and was thus made aware of said involvement and affiliation with this June 29, 2020 email from Getecsa. Strategic Marketing at this point initiated its internal investigation into the reasoning Getecsa was contacting Wagner for assistance with solving any invoicing issue between Getecsa and X10 Teams and more broadly into Wagner's involvement and affiliation with X10 Teams.

51.     On June 29, 2020, Getecsa forwarded an email thread to Strategic Marketing that it had sent to Wagner on June 19, 2020 wherein it requested assistance in solving an invoicing issue between X10 Teams and Getecsa, specifically an unpaid February 2020 invoice. This email thread, with the subject line "Fwd: Notification of Account Transaction" listed the payment status

of four (4) monthly invoices from February 2020 to May 2020 and also contained an email dated June 19, 2020 from U.S. Bank to Alvarao Boldo with Getecsa that provided notification of a wire transfer from X10 Teams to Getecsa in the amount of $7,776.58. The U.S. Bank account of record from which this transfer was made was the same account from which the transfer on May 30, 2019 was made (attached hereto as **Exhibit 4**). The wire transfers from X10 Teams to Getecsa were made by Mike Wagner in his role as Owner of X10 Teams.

52.     Getecsa then delivered to Strategic Marketing the previous five (5) invoices at the time from Getecsa to X10 Teams from January 2020 to May 2020.

53.     On June 29, 2020, the CFO for Strategic Marketing, after being apprised of the invoicing questions between Getecsa and X10, delivered an email to Benavides notifying him of the invoicing issues between Getecsa and X10 Teams and that Getecsa was trying to resolve an X10 payment issue and thus they "should have directed this inquiry to you directly or your Accounting team."

54.     On July 10, 2020, at 2:51 p.m., eleven (11) days later, Benavides responded to the email in Paragraph 53 and stated that Getecsa was confused based on Wagner's departure from Strategic Marketing and that the invoicing issue had been resolved.

55.     On July 10, 2020, at 2:53 p.m., two (2) minutes after the email referenced in 53, Benavides delivered another email to Wagner at Wagner's old Strategic Marketing email address (by mistake) in which he attempted to update Wagner that he spoke to Getecsa. In this email, Benavides stated to Wagner, "Now let's see how Chuck and Jon react to this". Chuck is the CFO of Strategic Marketing and Jon is the IT Director of Strategic Marketing. This email was inadvertently sent to the CEO of Strategic Marketing due to Wagner's separation from the company. This email is indicative of Wagner's and Benavides' culpability as they at this time

realized they had made a mistake in their actions and/or inactions effectively leading to Getecsa communicating with Strategic Marketing directly and thereby putting Strategic Marketing on notice of Wagner's involvement with X10 Teams.

56.     Through Wagner's ownership and control of and involvement with X10 Teams, Wagner was directly responsible for X10 Teams' billing of Strategic Marketing. He accepted overrides, made to himself significant distributions from the profits of X10 Teams, and received commissions through X10 Teams, all of which were derived directly from Strategic Marketing, in direct violation of his fiduciary duty to Strategic Marketing. Specifically, based upon Strategic Marketing's internal investigation, Wagner's compensation from X10 Teams totaled greater than 83% of X10 Teams' total expenses.

57.     In January 2020, Wagner, through X10 Teams, knowingly overbilled Strategic Marketing for time worked by a specific employee for the month of January 2020.

58.     From November 2018 until Wagner's separation with Strategic Marketing on June 25, 2020, Wagner neglected his job duties with Strategic Marketing, focusing his time and efforts on X10 Teams, absent Strategic Marketing's knowledge, thereby negatively impacting Strategic Marketing, causing it substantial loss in revenue in direct violation of his fiduciary duty to Strategic Marketing.

59.     Through Wagner's ownership and control of and involvement with Strategic Marketing, and with the cooperation of and assistance with Benavides, Wagner and Benavides made concerted, joint efforts to defraud Strategic Marketing through the use of X10 Teams. Wagner perpetuated this fraud and stole assets from Strategic Marketing while under a legal obligation to act as a fiduciary to Strategic Marketing.

60.     Wagner received from Strategic Marketing upon the elimination of the CIO position at Strategic Marketing and his corresponding separation from the company on June 25, 2020 a separation payment in the total amount of $50,190.00; $47,567.00 for two (2) months of base salary and commissions and $2,623.00 for two (2) months of medical and dental insurance benefits. Strategic Marketing hereby requests in part from this honorable court damages in the amount of $50,190.00.

61.     Wagner received from Strategic Marketing seventeen (17) months of medical and dental insurance benefits in the total amount of $23,287.00 through his employment with Strategic Marketing as CIO while maintaining employment with X10 Teams in direct violation of the Master Services Agreement between Strategic Marketing and X10 Teams, Section 5.2, which states that "neither X10, X10's employees…are eligible for, nor shall they participate in any pension, health, or other employee benefit plan of Strategic Marketing." Strategic Marketing hereby requests in part from this honorable court damages in the amount of $23,287.00.

62.     Benavides, as Partner and Owner of X10 Teams, in soliciting Wagner's employment with X10 Teams, violated the Non-Solicitation agreement in the Master Services Agreement between Strategic Marketing and X10 Teams, Section 5.5, which states that "X10 and Strategic Marketing agree not to offer employment to or solicit the other party's employees… without the prior consent of the other party. If either party Recruits a member of the other party, the Recruiting party shall immediately pay the other party… an amount equal to 100% of the total monetary compensation (including without limitation wages, salary, bonuses and commissions) paid to such employee by the other party in the twelve (12) months immediately preceding such Recruitment. Wagner, in the twelve (12) months immediately preceding his recruitment, Fiscal Year 2018, earned a total of $175,000.00 in salary, $109,000.00 in commissions, Fiscal Year 2018,

and $14,300.00 in medical, dental and vision insurance benefits, Fiscal Year 2018, for a total of $298,300.00 in monetary compensation. Strategic Marketing hereby requests in part from this honorable court damages in the amount of $298,300.00.

63.     Wagner received from his ownership and control of and involvement with X10 Teams in 2019 and 2020, thus far, distributions from profits of X10 Teams, derived from Strategic Marketing and only Strategic Marketing as its sole customer, in the amount of $39,183. Strategic Marketing hereby requests in part from this honorable court damages in the amount of $39,183.00.

64.     Wagner, in violation of the Employment Agreement, is liable for the attorney's fees of Strategic Marketing and thus Strategic Marketing requests in part from this honorable court damages in the amount of at least $40,000.00, and all other attorney's fees which may accrue through the life of this litigation.

65.     Strategic Marketing hereby requests from this honorable court damages at least in the amount $450,960.00 and all additional damages which may be derived through discovery.

66.     Based on the foregoing, Wagner conspired with Benavides to form a shell company, X10 Teams, without any disclosure whatsoever to Strategic Marketing of his ownership and control of and involvement with X10 Teams, in an effort to siphon assets from Strategic Marketing and enjoy same through distributions from profits of X10 Teams, derived solely from Strategic Marketing, while accepting compensation as an employee of Strategic Marketing. He exhibited a pattern of prohibited racketeering behavior, in direct violation of 18 U.S.C. § 1962, beginning in 2018 until June 2020, in an effort to conceal his ownership and control of and involvement with X10 Teams, all of which has caused Strategic Marketing injury to its business. Following Strategic Marketing's discovery of Wagner's involvement with X10 Teams but ignorant of Strategic Marketing's knowledge of the extent of his involved with, and in fact his ownership

of X10 Teams, Wagner falsely represented to Strategic Marketing in writing that the formation and creation of X10 Teams was solely the idea of Benavides. Specifically, Wagner misrepresented to Strategic Marketing that "I was not involved in the setup of X10 Teams. Alejandro Benavides came up with the concept, its name and created its marketing materials." However, the formation of X10 Teams was in fact an active joint effort between Wagner and Benavides. Wagner was the main drafter of the Master Services Agreement and Statement of Work eventually entered into by Strategic Marketing and X10 Teams, he was the creator of the PowerPoint presentation presented to the CFO of Strategic Marketing, he, at Benavides' agreement and cooperation, used Benavides as a "front man" or "strawman" so as to conceal his ownership and control of and involvement with X10 Teams. He and Benavides utilized various forms of communication, including mail and email, to secretly communicate, coordinate, and carry out their co-conspiracy to defraud Strategic Marketing. Wagner was the primary orchestrator of and controlled all of X10 Teams' actions in its dealings with Strategic Marketing. Benavides meanwhile was preoccupied with his role of CIO with CHUBB Insurance and only acted when directed to do so by Wagner as from time to time became necessary to maintain his appearance as owner of X10 Teams so as to conceal Wagner's ownership of same.

67.     Strategic Marketing was able during its investigation to acquire access to the emails described and detailed herein as a result of Wagner's forwarding of his personal emails to his Strategic Marketing email address, under the control of Strategic Marketing's domain.

68.     As a result of Defendants' actions, Strategic Marketing has overcompensated Wagner from January 2019 to June 2020. Strategic Marketing's business relationship with Getecsa by and through X10 Teams, for which upon Plaintiff's discovery of Wagner's ownership of X10 Teams and eventual termination of its business agreement with X10 Teams, has negatively

impacted said business relationship with Getecsa. Wagner as the operator in control of X10 Teams has deliberately overcharged Strategic Marketing on an invoice for January 2020 during the life of the business relationship between Strategic Marketing and X10 Teams. Strategic Marketing has suffered lost revenue as a result of Wagner's inattention to his job duties with Plaintiff in lieu of his attention and efforts given to the fraudulent operation of X10 Teams.

69.     Based on the foregoing, Wagner clearly and unequivocally conducted the affairs of his personal enterprise, X10 Teams, through a pattern of racketeering in a way that has caused direct and proximate damage to Strategic Marketing, and Strategic Marketing now hereby seeks relief.

## COUNT I – FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)

70.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

71.     X10 Teams is an enterprise engaged in and whose activities directly affect interstate commerce. Defendant Wagner is an owner and partner, and/or employed by Defendant X10 Teams. Defendant Benavides is an owner and partner, and/or employed by Defendant X10 Teams. Defendants Wagner's and Benavides' association with X10 Teams is clear and unequivocal.

72.     Defendants Wagner and Benavides agreed to and did conduct and participate in the conduct of X10 Teams' affairs through a pattern of racketeering activity for the purpose of intentionally defrauding Plaintiff. Specifically, Defendant Wagner engaged with Defendant Benavides in a pattern of joint, concerted efforts and communications in order to conceal Wagner's ownership and control of and involvement with X10 Teams for the unlawful purpose of intentionally defrauding Plaintiff so as to unlawfully acquire Plaintiff's assets while Defendant

Wagner was being compensated as an employee of Plaintiff during the business relationship of Plaintiff and X10 Teams.

73.     Pursuant to and in furtherance of their fraudulent scheme, Defendant Wagner with Defendant Benavides committed multiple related acts of: mail fraud, in violation of 18 U.S.C. § 1341, wherein Defendants Wagner and Benavides devised a scheme through the use of mail in order to hide direct communications with each other to conceal Wagner's ownership and control of and involvement with X10 Teams and in order to communicate with Plaintiff and Getecsa separately and distinctly in order to conceal Wagner's ownership and control of and involvement with X10 Teams from Plaintiff; wire fraud, in violation of 18 U.S.C. § 1343, wherein Defendants Wagner and Benavides voluntarily and intentionally devised in a scheme to defraud Plaintiff out of assets, with the intent to defraud Plaintiff, wherein it was reasonably foreseeable the interstate wire communications would be used, and interstate wire communications were in fact utilized to defraud Plaintiff, to hide direct communications between Defendants Wagner and Benavides with each other to conceal Wagner's ownership and control of and involvement with X10 Teams and in order to communicate with Plaintiff and Getecsa separately and distinctly in order to conceal Wagner's ownership and control of and involvement with X10 Teams from Plaintiff; fraud in connection with access devices, in violation of 18 U.S.C. § 1029, wherein Defendants Wagner and Benavides knowingly and intentionally with the intent to defraud Plaintiff used an access device, specifically a U.S. Bank account obtained by Defendant Wagner, to facilitate wire transfers in aggregate over $1,000.00 over a one year period through the guise of X10 Teams to defraud Plaintiff; and, theft and misappropriation of trade secrets, in violation of 18 U.S.C. § 1832, wherein Defendants Wagner and Benavides, with the intent to convert trade secrets related to services of

Plaintiff used in interstate commerce for the economic benefit of Plaintiff's customers, intending their theft of trade secrets would injure Plaintiff, stole such information.

74.     The acts set forth above and throughout this Complaint constitute a clear pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

75.     Defendants Wagner and Benavides have directly and indirectly conducted and participated in the conduct of the X10 Teams' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c), to the detriment of Plaintiff.

76.     As a direct and proximate result of Defendants Wagner's and Benavides' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business in that it has been defrauded into entering into a business agreement and relationship with a shell company, or enterprise, created by Defendant Wagner, solely for the purpose of stealing assets of Strategic Marketing while being compensated as an employee of Plaintiff. Plaintiff has thus overcompensated Defendant Wagner from January 2019 to June 2020. Plaintiff has entered into a business relationship with Getecsa by and through X10 Teams, for which upon Plaintiff's discovery of Defendant Wagner's ownership and control of and involvement with X10 Teams and eventual termination of its business agreement with X10 Teams, has negatively impacted said business relationship. Defendant Wagner as the operator in control of X10 Teams has deliberately overcharged Plaintiff on an invoice for January 2020 during the life of the business relationship between Plaintiff and X10 Teams. Plaintiff has suffered lost revenue as a result of Defendant Wagner's inattention to his job duties with Plaintiff in lieu of his attention and efforts given to the fraudulent operation of X10 Teams.

77.     Pursuant to 18 U.S.C. § 1964(c) Plaintiff hereby requests from this honorable court as a party injured by a RICO violation the totality of its attorney's fees herein.

78.     Pursuant to 18 U.S.C. § 1964(c) Strategic Marketing hereby requests from this honorable court treble damages at least in the amount of three times $450,960.00, totaling $1,352,880.00, and all additional damages which may be derived through discovery.

## COUNT II - FEDERAL CIVIL RICO, 18 U.S.C. § 1962(a)

79.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

80.     X10 Teams is an enterprise engaged in and whose activities directly affect interstate commerce.

81.     Defendants Wagner and Benavides used and invested income that was derived from a pattern of racketeering activity in X10 Teams, an interstate enterprise. Defendants Wagner and Benavides utilized the income obtained though X10 Teams they fraudulently and unlawfully acquired from Plaintiff in order to facilitate the use and growth of X10 Teams, with the goal of continuing to defraud Plaintiff.

82.     Defendants Wagner's and Benavides' activity described above in Paragraph 73 constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

83.     As a direct and proximate result of Defendants Wagner's and Benavides' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in its business in that Defendants Wagner and Benavides have utilized the income obtained though X10 Teams that was fraudulently and unlawfully stolen from Plaintiff in order to facilitate the use and growth of X10 Teams, with the goal of continuing to defraud Plaintiff.

84.     Pursuant to 18 U.S.C. § 1964(c) Plaintiff hereby requests from this honorable court as a party injured by a RICO violation the totality of its attorney's fees herein.

85.     Pursuant to 18 U.S.C. § 1964(c) Strategic Marketing hereby requests from this honorable court treble damages at least in the amount of three times $450,960.00, totaling $1,352,880.00, and all additional damages which may be derived through discovery.

## COUNT III - FEDERAL CIVIL RICO, 18 U.S.C. § 1962(b)

86.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

87.     X10 Teams is an enterprise engaged in and whose activities directly affect interstate commerce.

88.     Defendants Wagner and Benavides acquired and maintained interests in and control of the X10 Teams, the enterprise, through a pattern of racketeering activity. Specifically, Defendant Wagner engaged with Defendant Benavides in a pattern of joint, concerted efforts and communications in order to conceal Wagner's ownership and control of and involvement with X10 Teams for the unlawful purpose of intentionally defrauding Plaintiff so as to unlawfully acquire Plaintiff's assets while Defendant Wagner was being compensated as an employee of Plaintiff. Defendants Wagner and Benavides were able to fraudulently maintain this business relationship with Plaintiff from January 2019 to June 2020 and fund X10 Teams through these methods.

89.     Defendants Wagner's and Benavides' activity described above in Paragraph 73 constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

90.     Defendants Wagner and Benavides have directly and indirectly acquired and maintained interests in and control of X10 Teams, the enterprise, through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

91.     As a direct and proximate result of Defendants Wagner's and Benavides' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in its

business in that Defendants Wagner and Benavides have acquired, maintained and controlled X10

Teams in a manner in which they fraudulently and unlawfully stole assets from Plaintiff in order

to facilitate the use and growth of X10 Teams, with the goal of continuing to defraud Plaintiff.

92.     Pursuant to 18 U.S.C. § 1964(c) Plaintiff hereby requests from this honorable court

as a party injured by a RICO violation the totality of its attorney's fees herein.

93.     Pursuant to 18 U.S.C. § 1964(c) Strategic Marketing hereby requests from this

honorable court treble damages at least in the amount of three times $450,960.00, totaling

$1,352,880.00, and all additional damages which may be derived through discovery.

## COUNT IV - FEDERAL CIVIL RICO, 18 U.S.C. § 1962(d)

94.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs

of this Complaint as if fully set forth herein.

95.     As set forth above, in Counts I, II, and III, Defendants Wagner and Benavides

agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

96.     Defendants Wagner and Benavides have intentionally conspired and agreed to

directly and indirectly use or invest income that is derived from a pattern of racketeering activity

in X10 Teams, an interstate enterprise, acquire or maintain interests in the enterprise through a

pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the

enterprise through a pattern of racketeering activity.  Defendants Wagner and Benavides knew that

their predicate acts were part of a pattern of racketeering activity and agreed to the commission of

those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate

18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

97.     As a direct and proximate result of Defendants Wagner's and Benavides' joint

conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §

1962(d), Plaintiff has been injured in its business in that it has been defrauded into entering into a business agreement and relationship with a shell company, or enterprise, created by Defendant Wagner, solely for the purpose of stealing assets of Strategic Marketing while being compensated as an employee of Plaintiff. Plaintiff has thus overcompensated Defendant Wagner from January 2019 to June 2020. Plaintiff has entered into a business relationship with Getecsa by and through X10 Teams, for which upon Plaintiff's discovery of Defendant Wagner's ownership and control of and involvement with X10 Teams and eventual termination of its business agreement with X10 Teams, has negatively impacted said business relationship. Defendant Wagner as the operator in control of X10 Teams has deliberately overcharged Plaintiff on an invoice for January 2020 during the life of the business relationship between Plaintiff and X10 Teams. Plaintiff has suffered lost revenue as a result of Defendant Wagner's inattention to his job duties with Plaintiff in lieu of his attention and efforts given to the fraudulent operation of X10 Teams.

98.    Pursuant to 18 U.S.C. § 1964(c) Plaintiff hereby requests from this honorable court as a party injured by a RICO violation the totality of its attorney's fees herein.

99.    Pursuant to 18 U.S.C. § 1964(c) Strategic Marketing hereby requests from this honorable court treble damages at least in the amount of three times $450,960.00, totaling $1,352,880.00, and all additional damages which may be derived through discovery.

## COUNT V – BREACH OF CONTRACT
### (MICHAEL J. WAGNER)

100.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

101.    Plaintiff and Defendant Wagner entered into a legally binding contract, the Employment Agreement, on May 11, 2015, wherein Plaintiff hired Defendant Wagner as its CIO. Defendant Wagner was to provide certain services, specifically described as Defendant Wagner's

duties and responsibilities in **Exhibit 2**, of which include but are not limited to: overseeing all aspects of the development of technology for Plaintiff, including managing the day-to-day operations of the information technology department and directing staff to support information technology functions; providing technological guidance; supervising information system and communications network; developing and implementing new platforms to serve Plaintiff in every aspect; developing new products, algorithms, and code to accomplish Plaintiff's business objectives; and establishing and directing the strategic and tactical goals, policies, and procedures for the information technology department of Plaintiff.

102.    Plaintiff provided adequate consideration for the Employment Agreement by way of compensation paid to Defendant Wagner in return for the services provided in part in the preceding paragraph.

103.    Plaintiff at all times fully performed its obligations pursuant to the Employment Agreement.

104.    Defendant Wagner clearly and unequivocally breached the Employment Agreement by way of his failure to perform his obligations under the terms of the Employment Agreement and by way of his violation of multiple terms of the Employment Agreement. In particular, Defendant Wagner breached his duty under the Employment Agreement to act in a fiduciary capacity for Plaintiff, to keep confidential and not divulge to any person, firm, or corporation any knowledge or information with respect to business of Plaintiff, or use said confidential information. Defendant further breached his duty under the Employment Agreement to keep and hold confidential all trade secrets of and related to this business of Plaintiff and not divulge any such trade secrets.

105.    As contemplated and agreed to in the express language of the Employment Agreement, as a result of Defendant Wagner's violation of provisions of the Employment Agreement described in the preceding paragraph, Plaintiff is entitled to recover the totality of its attorney's fees and its cost of litigation.

106.    As a direct and proximate result of Defendant Wagner's breach of the Employment Agreement, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

**COUNT VI – BREACH OF CONTRACT**
**(X10 TEAMS, LLC)**

107.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

108.    Plaintiff and Defendant X10 Teams, LLC entered into a legally binding contract, the Master Services Agreement and Statement of Work, on January 24, 2019, wherein Defendant X10 Teams was to provide Plaintiff certain offshore and/or nearshore application development services, more specifically described in **Exhibit 1**.

109.    Plaintiff provided adequate consideration for the Master Services Agreement.

110.    Plaintiff at all times fully performed its obligations pursuant to the Master Services Agreement.

111.    Defendant X10 Teams clearly and unequivocally breached the Master Services Agreement by way of its violation of terms of the Master Services Agreement. In particular, Defendant X10 Teams breached its duty under the Master Services Agreement not to offer employment or solicit the other party's employees, here Defendant Wagner, or persuade, encourage or induce any such employee to become employed by or affiliated in any capacity with any person or firm engaged in providing the same or similar services rendered by the employee

when employed by his employer and by recruiting Wagner without the prior written consent of Plaintiff. By way of X10 Teams' recruitment of Defendant Wagner, it has facilitated and contributed to the misappropriation of trade secrets and breach of contract committed by Defendant Wagner.

112.    As contemplated and agreed to in the express language of the Master Services Agreement, as a result of Defendant X10 Teams' violation of the specific provision described in the preceding paragraph, Plaintiff is entitled to recover an amount equal to one hundred percent (100%) of the total monetary compensation (including without limitation, wages, salary, bonuses, and commissions) paid to such employee, here Defendant Wagner, by Strategic Marketing in the twelve (12) months immediately preceding X10 Teams' recruitment of Defendant Wagner.

113.    As a direct and proximate result of Defendant X10 Teams' breach of the Master Services Agreement, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

## COUNT VII – BREACH OF FIDUCIARY DUTY

114.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

115.    Plaintiff and Defendant Wagner entered into a legally binding contract, the Employment Agreement, on May 11, 2015, wherein Plaintiff hired Defendant Wagner as its CIO.

116.    As expressly stated in the Employment Agreement, and acknowledged and understood by Defendant Wagner, Defendant Wagner was at all times relevant obligated to act in a fiduciary capacity for Plaintiff.

117.    As a result of Defendant Wagner's fiduciary duty to Plaintiff, he owed Plaintiff a duty of good faith and was thereby to act at all times in the best interest and for the benefit of Plaintiff.

118.    As a result of Defendant Wagner's fiduciary duty to Plaintiff, he owed Plaintiff a duty of loyalty and was thereby to act all times without personal economic conflict and to refrain from using his position of trust and confidence to further his own private interest.

119.    Defendant Wagner intentionally breached his fiduciary duties and showed a reckless disregard for Plaintiff's goodwill and business to the Plaintiff's damage and to its detriment by way of his fraudulent and unlawful conduct violative of the Racketeer Influenced and Corrupt Organizations Act described herein. Specifically, Defendant Wagner conspired with Defendant Benavides to form a shell company, X10 Teams, without any disclosure whatsoever of his ownership and control of and involvement with X10 Teams, in an effort to siphon assets from Plaintiff and enjoy same, thereby taking distributions from profits of X10 Teams, derived solely from X10 Teams' sole customer, Strategic Marketing, at all times relevant, while accepting compensation as an employee of Plaintiff.

120.    Revenue of Plaintiff directly suffered as a result of Defendant Wagner's actions described herein, as his time and attention while employed by Plaintiff was directed nearly exclusively toward the operation of X10 Teams, thereby causing a decrease in quantity and quality of product produced and distributed by Plaintiff. This fact was known and understood by Defendant Wagner while acting under a fiduciary duty to Plaintiff.

121.    As a direct and proximate result of Defendant Wagner's breach of fiduciary duty, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

122.     Defendant Wagner has acted toward Plaintiff with malice, fraud, gross negligence, and/or oppressiveness and as such, Plaintiff is entitled to an award of punitive damages and hereby seeks same.

## COUNT VIII – PIERCING THE CORPORATE VEIL
## (MICHAEL J. WAGNER & CESAR A. BENAVIDES)

123.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

124.     At all times relevant, Defendants Wagner and Benavides lacked corporate separateness between themselves and X10 Teams.

125.     Defendants Wagner and Benavides exerted complete and exclusive control over X10 Teams by exercising unilateral authority over X10 Teams' actions, which were in fact the actions of Defendants Wagner and Benavides.

126.     Defendants Wagner and Benavides controlled and operated X10 Teams in a manner and fashion in a way to harm Plaintiff.

127.     As a result, X10 Teams' corporate veil should be pierced, and Defendants Wagner and Benavides should be held personally liable for any and all of X10 Teams' liabilities under this Complaint.

128.     It would promote injustice and leave Plaintiff unduly prejudiced to treat Defendants Wagner and Benavides and X10 Teams differently because Defendants Wagner's and Benavides' joint unilateral actions created X10 Teams' liability to Plaintiff. In addition, in light of Defendants Wagner's and Benavides' domination of control over X10 Teams' actions, any inability by X10 Teams to pay for its liability to Plaintiff is Defendants Wagner's and Benavides' fault alone.

## COUNT IX – UNJUST ENRICHMENT

129.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully stated herein.

130.     As a result of Defendants' fraudulent conduct and unlawful conduct violative of the Racketeer Influenced and Corrupt Organizations Act described herein, Defendants have been unjustly enriched at the expense of and to the detriment of Plaintiff.

131.     It would be inequitable to permit Defendants to retain the benefit of its unjust enrichment.

132.     As a direct and proximate result of Defendants' inequitable actions and unjust enrichment, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

## COUNT X – FRAUDULENT MISREPRESENTATION
## (MICHAEL J. WAGNER & CESAR A. BENAVIDES)

133.     Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully stated herein.

134.     Based upon the foregoing, Defendants Wagner and Benavides made false representations and/or nondisclosures to Plaintiff regarding Defendant Wagner's ownership and control of and involvement with X10 Teams. Defendants Wagner and Benavides engaged in a series of joint, concerted efforts and communications in order to conceal Wagner's ownership and control of and involvement with X10 Teams, and thereby falsely convince Plaintiff that Benavides was the originator and sole owner of X10 Teams. Defendant Wagner's role with X10 Teams was never disclosed to Plaintiff until June 2020 when Plaintiff discovered Defendant Wagner's affiliation with X10 Teams through its internal investigation. The idea of X10 Teams was in fact that of Defendant Wagner. Assistance with Defendant Wagner's operation of X10 Teams was provided by and through Defendant Benavides who at all times acted as the face of X10 Teams

and exclusive point of contact of X10 Teams for Plaintiff, while Defendant Wagner operated X10 Teams behind the scenes, disbursing unto himself distributions from X10 Teams' profits, derived exclusively from X10 Teams' sole customer at all times relevant, Strategic Marketing.

135.    Defendants Wagner and Benavides knew that the representations and/or nondisclosures described herein were false or should have reasonably been known to them to be false.

136.    The false representations and/or nondisclosures were done with the intent to induce Plaintiff to enter into business relations with X10 Teams by way of the Master Services Agreement for the direct benefit of Defendants Wagner and Benavides.

137.    Plaintiff reasonably but detrimentally relied upon these false representations and/or nondisclosures made by Defendants Wagner and Benavides in entering into the Master Services Agreement with X10 Teams and unknowingly provided its former employee, Defendant Wagner, not only income under the Employment Agreement, but through business transacted with X10 Teams and thus distributions taken by Defendant Wagner from profits of X10 Teams.

138.    As a direct and proximate cause of Defendants Wagner's and Benavides' false representations and/or nondisclosures and Plaintiff's detrimental reliance thereon, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

139.    Defendants Wagner and Benavides acted toward Plaintiff with malice, fraud, gross negligence, and/or oppressiveness and as such, Plaintiff is entitled to punitive damages and hereby seeks same.

## COUNT XI – CONVERSION

140.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully stated herein.

141.    Defendants knowingly and/or intentionally exerted unauthorized and unlawful control over Plaintiff's assets by and through their conspiracy to defraud Plaintiff. Plaintiff had at all times legal title to its assets, and at the time of Defendants' conversion had possession of or the right to possession of its assets. Defendants exercise dominion over Plaintiff's assets associated with the operation of Plaintiff, denying Plaintiff's right to use its assets, which was to the Defendants' own use and beneficial enjoyment. Defendants at all times had the intention to interfere with Plaintiff's possession of its assets. Defendants have and continue to unlawfully control Plaintiff's assets to the detriment of Plaintiff.

142.    As a direct and proximate result of Defendants' conversion, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

143.    Defendants have acted toward Plaintiff with malice, fraud, gross negligence, and/or oppressiveness and as such, Plaintiff seeks and is entitled to punitive damages and hereby seeks same.

## COUNT XII – CIVIL CONSPIRACY

144.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully stated herein.

145.    Based upon the foregoing, Defendants Wagner and Benavides engaged in a concerted action with legal malice, acting intentionally, purposefully, and without lawful justification by coercing Plaintiff to enter into the Master Services Agreement and Statement of Work, and thereby its business relationship with X10 Teams by concealing and failing to disclose to Plaintiff Defendant Wagner's ownership and control and involvement with X10 Teams, thereby allowing Defendant Wagner to receive distributions from X10 Teams' profits, derived solely from Plaintiff, while receiving compensation as an employee of Plaintiff.

146.    As a direct and proximate cause of Defendants Wagner's and Benavides' concerted action, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

147.    Defendants have acted toward Plaintiff with malice, fraud, gross negligence, and/or oppressiveness and as such, Plaintiff seeks and is entitled to punitive damages and hereby seeks same.

## COUNT XIII – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## MICHAEL J. WAGNER

148.    Plaintiff reiterates and incorporates by reference each of the preceding paragraphs of this Complaint as if fully stated herein.

149.    Based upon the foregoing, Defendant Wagner owed Plaintiff a duty to act in good faith, sincerely and without deceit or fraud based on his special relationship with Plaintiff as a fiduciary of Plaintiff and based on the trust in him from Plaintiff as a fiduciary of Plaintiff. Based on the facts above, Defendant Wagner breached that duty to Plaintiff by misrepresenting and/or not disclosing his ownership and control of and involvement with X10 Teams prior to his coercion of Plaintiff into entering into the Master Services Agreement and Statement of Work, and thereby its business relationship with X10 Teams.

150.    As a direct and proximate result of Defendant Wagner's breach of his duty of good faith and fair dealing, Plaintiff has incurred damages as set forth herein for which it is now entitled to recover compensatory damages.

151.    Defendant Wagner has acted toward Plaintiff with malice, fraud, gross negligence, and/or oppressiveness and as such, Plaintiff seeks and is entitled to punitive damages and hereby seeks same.

**WHEREFORE**, Plaintiff, by counsel, respectfully demands as follows:

A.      Judgment entered in Plaintiff's favor on all causes of action described herein;

B.      A trial by jury on all issues so triable;

C.      Compensatory damages;

D.      Treble damages;

E.      That Defendants be ordered to pay Plaintiff's costs, expenses, and attorneys' fees

incurred in this action as allowed by law, and any other applicable fees, expenses, and costs;

F.      Post and pre-judgment interest in the amounts allowed by law;

G.      That Defendants be ordered to pay punitive damages; and

H.      Any and all other relief to which Plaintiff may otherwise be properly entitled.

Respectfully Submitted,

*/s/ Randall S. Strause*
RANDALL S. STRAUSE
STRAUSE LAW GROUP, PLLC
804 Stone Creek Pkwy., Ste. One
Louisville, KY 40223
Telephone: (502) 426-1661
Facsimile: (502) 426-6772
Email: rstrause@strauselawgroup.com
*Counsel for Plaintiff*